## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

**TEVIN LEWIS**                    **CASE NO.  6:16-CV-01280**

**VERSUS**                         **JUDGE DOUGHTY**

**DWIGHT HUVAL ET AL**             **MAGISTRATE JUDGE HANNA**


### REPORT AND RECOMMENDATION

Pending before the Court is Defendants' Re-urged Motion to Dismiss Pursuant to F.R.C.P. Rule 12(b)(6), which the Court previously converted to a Motion for Summary Judgment. (Rec. Doc. 25 and 26). Plaintiff opposed the motion (Rec. Doc. 30), and Defendants replied (Rec. Doc. 34). The Motion was referred to this Court for report and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court.  For the following reasons, the Court recommends that Defendants' Motion be GRANTED.

### BACKGROUND

Plaintiff filed this suit on September 12, 2016 against Lafayette Police Officer, Dwight Huval (individually and officially) and Lafayette City-Parish Consolidated Government (LCG) following his arrest on September 12, 2015. (Rec. Doc. 1). Plaintiff's Complaint asserts claims pursuant to 42 U.S.C. §1983 and §1988 for alleged violations of his Fourth, Fifth, Eighth, and Fourteenth Amendment rights, based on the following alleged facts:

> [On] September 12, 2015, Plaintiff was lawfully talking to friends in the local neighborhood subdivision of Sunnyside in Lafayette, Louisiana, when officers abruptly approached the scene in a military assault styled envelopment. Intimidated by the overwhelming police force and unaware of any circumstances which restricted his freedom to vacate the premises, Mr. Lewis decided to vacate the scene. As Mr. Lewis is crossing the street to go about his business, defendant Huval jumped out of his police cruiser from the passenger side before the car came to a complete stop. Mr. Lewis continued across a fence through a neighbor's yard and continued jogging away, only to discover defendant Huval chasing him with a taser drawn and pointed at him. Petitioner picked up speed due to being fearful of being stunned for no apparent reason. Defendant Huval, unable to keep pace with Mr. Lewis, discarded his taser, drew his service firearm, and without cause shot Mr. Lewis in the back.

The Court administratively closed the matter on February 23, 2017 pending outcome of Plaintiff's criminal charges resulting from the arrest. (Rec. Doc. 12). Plaintiff filed a motion to reopen the case, which the Court granted, after Defendant pled guilty to one count of possession of firearm by convicted felon. (Rec. Doc. 13; 14). Other charges for illegal carrying of a weapon and resisting arrest were dismissed. (Rec. Doc. 13-1; 13-2). At his guilty plea hearing, Plaintiff admitted that on the date in question, upon seeing police officers approach, he fled on foot, and that the officer pursuing him saw a handgun in his possession. (Rec. Doc. 26-3, p. 9-10).

Once the case was reopened, the Court considered Defendants' earlier filed Motion to Dismiss under F.R.C.P. Rule 12(b)(6) and denied it without prejudice to allow Plaintiff the opportunity to amend. (Rec. Doc. 16, adopted at Rec. Doc. 20).

2

Plaintiff did not file any amended complaint. Therefore, Defendants re-urged their Motion to Dismiss. (Rec. Doc. 24). In support of the Motion, Defendants filed numerous exhibits consisting of Plaintiff's plea documents, hearing transcripts, and other pleadings from the criminal proceedings in state court. (Rec. Doc. 26-2 – 26-7). The submitted evidence includes hearing testimony from Officer Huval and other investigating officers. Officer Huval testified at a suppression hearing in state court that he observed Lewis flee upon officers' approach, that he saw Lewis produce a gun from his waistband during the pursuit, that Lewis failed to comply with Officer Huval's two commands to drop the gun, and that Lewis's hands remained out of view as he appeared to be "fooling with the gun." (Rec. Doc. 26-4, p. 75-78). When Lewis did not stop running or drop the gun after two commands, Officer Huval shot him. (Rec. Doc. 26-4, p. 77). Upon approaching Lewis, the arresting officers discovered that the gun was tethered to Lewis's body. (Rec. Doc. 26-4, p. 80-81). Lewis's Opposition to Defendants' Motion admits that the gun was attached to a lanyard around his neck, and that his hand got stuck in the lanyard. (Rec. Doc. 30, p. 5. See also Lewis's recorded statement. Rec. Doc. 41). Following the incident, an internal investigation found that Officer Huval was justified in shooting Lewis. (Rec. Doc. 36-3, p. 18-23; 36-4, p. 15).

Considering that Defendants submitted multiple exhibits beyond the scope of the pleadings, which the Court found were nonetheless significant to the resolution

of the issues, the Court converted Defendants' Motion into a Motion for Summary Judgment and provided Plaintiff the opportunity to respond with similar summary judgment evidence. (Rec. Doc. 25). Plaintiff filed an opposition and attached transcripts from grand jury proceedings regarding Officer Huval. (Rec. Doc. 30; 31).[1]

Defendants urge the Court to dismiss Plaintiff's §1983 claims primarily on the grounds that his guilty plea to the felon in possession charge precludes recovery under *Heck v. Humphrey*. Defendants further seek dismissal of Plaintiff's Fifth, Eighth, and Fourteenth Amendment claims, *Monell* claims against LCG, and state claims for excessive force and false arrest.

## LAW AND ANALYSIS

### I.    Motion for Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56(a) also permits partial summary judgment on any part of a claim or defense. A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable governing law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248

---

[1]    Although neither party presented any evidence regarding the outcome of the grand jury proceedings, the totality of the evidence submitted suggests that the grand jury declined to indict Officer Huval.

(1986); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir.2009); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir.2000). A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir.2008) (citing *Anderson,* 477 U.S. at 252); *Hamilton,* 232 F.3d at 477.

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact. *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir.2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact. *Washburn v. Harvey*, 504 F.3d at 508. All facts and inferences are construed in the light most favorable to the nonmoving party. *Brumfield v. Hollins*, 551 F.3d at 326 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's claim. *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir.2008) (citing *Celotex*, 477 U.S. at 325). The motion should be granted if the nonmoving party cannot produce evidence to support

an essential element of its claim. *Condrey v. Suntrust Bank of Ga*., 431 F.3d 191, 197 (5th Cir.2005).

## II.   Whether Plaintiff's 4th Amendment claims are barred by *Heck v. Humphrey*.

A. *Heck* analysis of excessive force claim.

Plaintiff's primary claim for excessive force is governed by the Fourth Amendment, which protects individuals from unreasonable seizures. *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004). In order to state an excessive force claim, the plaintiff must show not only that he was seized, but also (1) that he suffered an injury which (2) resulted directly and only from the use of force that was excessive to the need; and (3) that the force used was objectively unreasonable. *Id*.

Nevertheless, under *Heck v. Humphrey,* 512 U.S. 477 (1994), a plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights if that "violation arose from the same facts attendant to the charge for which he was convicted, unless he proves 'that his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.'" *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008), quoting *Heck,* 512 U.S. at 486-87. "Although the *Heck* principle applies to §1983 excessive force claims, the determination of whether such claims are barred is analytical and fact-intensive, requiring [the court] to focus on whether

success on the excessive force claim requires negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction." *Id*. Stated differently, the court should determine whether the plaintiff's excessive force claim is "conceptually different from his conviction…such that 'a successful suit on the former would not necessarily imply the invalidity of the latter.'" *Ballard v. Burton*, 444 F.3d 391, 400 (5th Cir. 2006), citing *Heck*.

Plaintiff pled guilty to possession of a firearm by convicted felon in violation of La. R.S. 14:95.1, while other charges were dismissed. (Rec. Doc. 26-2). The Fifth Circuit has considered whether a successful §1983 suit for false arrest and excessive force could call into question the validity of a felon in possession conviction arising from the same factual circumstances when the arrestee was also convicted of battery. *Hudson v. Hughes*, 98 F.3d 868, 872 (5th Cir. 1996). In *Hudson*, the plaintiff, who was convicted for felon in possession and battery, later asserted §1983 excessive force and false arrest claims. *Id*. In finding that *Heck* barred the plaintiff's excessive force claims, the court reasoned:

> In Louisiana, self-defense is a justification defense to the crime of battery of an officer. To make out a justification defense, the criminal defendant charged with battery of an officer must show that his use of force against an officer was both reasonable and necessary to prevent a forcible offense against himself. Because self-defense is a justification defense to the crime of battery of an officer, Hudson's claim that Officers Defillo, Hingle, and Lanasa used excessive force while apprehending him, if proved, necessarily would imply the invalidity of

his arrest and conviction for battery of an officer. This is true because the question whether the police applied reasonable force in arresting him depends in part on the degree of his resistance, which in turn will place in issue whether his resistance (the basis of his conviction for assaulting a police officer) was justified, which, if it were, necessarily undermines that conviction.

*Id.*, at 873 (citations omitted).

The facts in this case differ from *Hudson* in that, here, Lewis was convicted only of felon in possession; he was not convicted of the other charges (illegal carrying weapon and resisting arrest). (Rec. Doc. 26-2). This is in contrast to *Hudson*, wherein the plaintiff had also been convicted of battery. In other words, the Fifth Circuit was not asked to consider Hudson's felon in possession charge in a vacuum. The same analysis does not necessarily apply here, where the only conviction before the court is that of felon in possession. Compare also *Arnold v. Town of Slaughter*, and cases cited therein, wherein the issue was whether excessive force claims could conceivably invalidate underlying convictions for assault and/or resisting an officer. *Arnold v. Town of Slaughter*, 100 Fed.Appx. 321, 323 (5th Cir. 2004), discussing *Hainze v. Richards,* 207 F.3d 795, 799 (5th Cir.2000); *Sappington v. Bartee,* 195 F.3d 234, 237 (5th Cir.1999), *inter alia*. In those cases, as in *Hudson*, the degree of the arrestee's resistance was pertinent to both the convicted charge (assault/battery/resisting) and the question of excessive force. *Id*. In contrast, a felon in possession charge entails nothing more than a finding that the individual was a

8

convicted felon who possessed a firearm. See La. R.S. 14:95.1. The arrestee's resistance is immaterial.

Considering the particular facts of this case, the Court finds that a judgment in Plaintiff's favor on his excessive force claims would not necessarily imply invalidation of his felon in possession conviction. As one district court reasoned:

> Finding that an arrest constituted an unreasonable seizure because excessive force was used does not necessarily imply the invalidity of plaintiff's convictions for being a felon in possession of a firearm, carrying a concealed weapon and possession of a firearm in the commission of a felony. An arrest could be performed after finding sufficient probable cause, but the arrest could constitute an unreasonable seizure for some reason that would not preclude prosecution of a case or prevent the use of certain evidence in a trial. In this case, plaintiff contends that the defendant police officers used excessive force during the arrest. The arrest itself may have been lawful, as could be the finding of weapons in plaintiff's possession, while the force used may have been excessive to the point that it constitutes an unreasonable seizure under the Fourth Amendment. The claim of excessive force would be independent from a claim of unlawful arrest which might challenge plaintiff's conviction. The statutes governing the crimes for which plaintiff was convicted…do not require that the officer be acting in the lawful performance of his duties. Finding that excessive force was used during this arrest would not impact the jury's determination of defendant's guilt on the charges of felon in possession of a firearm, carrying a concealed weapon and possession of a firearm in the commission of a felony. Therefore, plaintiff's excessive force claim is not barred by *Heck*.

> *Medley v. City of Detroit*, No. 2:07-CV-15046, 2008 WL 4279360, at *12 (E.D. Mich. Sept. 16, 2008).

This Court agrees with the reasoning in *Medley*. A jury could find that Officer Huval used excessive force in effectuating the arrest, without undermining the fact

that Lewis was a convicted felon in possession of a firearm at the time. Therefore, the Court finds that Plaintiff's excessive force claims are not *Heck*-barred.

In support of their argument that Plaintiff's Fourth Amendment claims are *Heck*-barred, Defendants tout the fact that Plaintiff was also charged with resisting arrest. (Rec. Doc. 26-1, p. 22). Defendants cite no cases in support of extending the *Heck* inquiry to a crime charged and then dismissed. In each of Defendants' cited cases, the plaintiffs were convicted of the charged crimes at issue (e.g. *Hudson*, 98 F.3d at 870, plaintiff convicted of battery; *Arnold*, 100 Fed.Appx. at 323, plaintiff convicted of resisting an officer). Defendants further conflate Lewis's "resistance (by flight and by refusing to drop his illegally possessed firearm)" with simple possession of a firearm. (Rec. Doc. 26-1, p. 23). The act of illegally possessing a firearm cannot be construed as an act of resistance. Therefore, the Court finds that Plaintiff's excessive force claims are not barred by *Heck*.

B. *Heck* analysis of false arrest claim.

Plaintiff did not explicitly plead false arrest; however, Defendants seek to dismiss any such claims, apparently to the extent Plaintiff's allegations could be construed as such. "[T]o prevail in a § 1983 claim for false arrest, a plaintiff must show that he was arrested without probable cause in violation of the Fourth Amendment." *Parm v. Shumate,* 513 F.3d 135, 142 (5th Cir.2007). If a finding in

Plaintiff's favor on this claim would call into question the validity of his conviction, *Heck* requires dismissal. *Hudson*, 98 F.3d at 872.

In finding that *Heck* barred the plaintiff's false arrest claims, the Fifth Circuit in *Hudson* held that if the arresting officers had lacked probable cause to arrest Plaintiff for simple battery, the arrest would have been invalid, and the firearm discovered in the plaintiff's possession as a result of the arrest would have been subject to suppression under the Fourth Amendment as the "fruit" of an illegal arrest. *Hudson,* 93 F.3d at 872, citing *United States v. Wadley,* 59 F.3d 510, 512 (5th Cir.1995). Further, the court found it was improbable that doctrines such as independent source, inevitable discovery and harmless error would have permitted the introduction of the firearm as evidence, because there was no evidence in that case that the officer would have discovered the evidence but for the arrest. *Id.*

In this case, Officer Huval had probable cause to arrest Lewis for resisting an officer. La. R.S. 14:108(A) defines this crime as "the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest, lawful detention, or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, detaining, seizing property, or serving process is acting in his official capacity." Officer Huval was uniformed and clearly acting in his official capacity in assisting to serve a warrant. Lewis's act of

fleeing the scene and refusal to comply with Officer Huval's commands to stop could constitute interference with, opposition or resistance to, or obstruction of Officer Huval's duties. Hence, the Court finds that Officer Huval had probable cause to detain Lewis at least for resisting an officer. The fact that Lewis was not ultimately convicted of resisting arrest is immaterial. See *Daigre v. City of Waveland, Miss.,* 549 F. App'x 283, 287 (5th Cir. 2013), citing *Wells v. Bonner,* 45 F.3d 90 (5th Cir.1995). ("If there was probable cause for any of the charges made…then the *arrest* was supported by probable cause, and the claim for false arrest fails.") Therefore, because Lewis was not unlawfully arrested, he could not prevail on his false arrest claim. Thus, the Court finds that his false arrest claims are *Heck*-barred.

## III.    Fourth Amendment excessive force and false arrest claims.

Having found that *Heck* does not preclude Plaintiff's excessive force, the Court next considers Defendant's merits challenge to Plaintiff's Fourth Amendment claims. Defendants also assert the defense of qualified immunity to these claims.

As stated above, in order to state a claim for excessive force under the Fourth Amendment, the plaintiff must show that he was seized and that (1) he suffered an injury which (2) resulted directly and only from the use of force that was excessive to the need; and (3) that the force used was objectively unreasonable. *Flores,* 381 F.3d at 396. Defendants argue Officer Huval's force was neither excessive to the need nor objectively unreasonable.

12

The Fifth Circuit summarized the Fourth Amendment reasonableness standard as follows:

> As in other Fourth Amendment contexts, the "reasonableness" inquiry is objective: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."
>
> "An officer's use of deadly force is not excessive, and thus no constitutional violation occurs, when the officer reasonably believes that the suspect poses a threat of serious harm to the officer or to others." "The excessive force inquiry is confined to whether the [officer or another person] was in danger *at the moment of the threat* that resulted in the [officer's use of deadly force]."
>
> *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011) (citations omitted).

Defendants maintain that regardless of whether Lewis sustained a constitutional injury, Defendants are protected by qualified immunity. The Fifth Circuit set forth the applicable law as follows:

> When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. To discharge this burden, "a plaintiff must satisfy a two-prong test." "First, he must claim that the defendants committed a constitutional violation under current law." "Second, he must claim that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." "To be 'clearly established' for purposes of qualified immunity, '[t]he contours of the

right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" "The central concept is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'"

*Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194–95 (5th Cir. 2009) (citations omitted).

The court need not consider whether a constitutional violation occurred under the first prong when the facts support a finding that the defendant's actions were objectively reasonable under the second prong. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Therefore, in this case, the Court need not consider whether Officer Huval violated the Fourth Amendment when the facts support a finding of qualified immunity.

An officer "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard,* 572 U.S. ——, ——, 134 S.Ct. 2012, 2023 (2014). Supreme Court precedent does not require a case directly on point for a right to be clearly established; existing precedent must have placed the statutory or constitutional question beyond debate. *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018), citing *White,* 580 U.S., at ——, 137 S.Ct. 541, 551 (2017). "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.*

14

The Supreme Court held long ago that, "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). Since *Garner*, the Supreme Court has refined the legal test for excessive force; it is situation-specific. *Mullenix v. Luna*, 136 S. Ct. 305, 309 (2015). The court should not decide generally whether an "officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Id*., citing *Brosseau v. Haugen,* 543 U.S. 194, 199, (2004) (*per curiam*). Rather, the court must frame the legal inquiry in the context of the situation: "The correct inquiry…[i]s whether it was clearly established that the Fourth Amendment prohibited the officer's conduct in the "situation [she] confronted," which in that case was "whether to shoot a disturbed felon, set on avoiding capture through vehicular flight, when persons in the immediate area are at risk from that flight." *Id*.

The undisputed evidence shows that the area in question was known as a high-crime and high-drug neighborhood. (Rec. Doc. 26-4, p. 4. See also Plaintiff's Opposition at Rec. Doc. 30, p. 5, wherein Plaintiff stated, "It is well established that the neighborhood…is a dangerous one."). Upon police officers' arrival, Lewis fled the scene. (Rec. Doc. 26-4, p. 72-73). Presence in a narcotics trafficking area, together with unprovoked flight upon noticing police, constitutes reasonable

suspicion to stop a suspect. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). When Officer Huval saw Lewis pull a gun from his waistband, the degree of suspicion and danger escalated. Officer Huval testified at the hearing on Lewis's motion to suppress in the state court criminal proceedings and explained the encounter as follows:

> When I initially saw Tevin standing in the street, I didn't see a gun, at all. But, as he landed on the other side the fence, I saw the gun come completely out of his waistband. And I was only about ten feet away, so I recognized it as a Glock. I carry a Glock myself, so I know what they look like.
>
> So, as soon as I saw the gun everything changed, at that point. I can't tell you how I got over the fence. I can't tell you where my taser went. But, somehow, I got over the fence, and I drew my pistol.
> …
>
> That's when it changed from a foot pursuit to a to, you know, a very serious encounter. So I started running behind him, and I could see a lot of motion. But the gun was still in his possession[.]
> …
>
> Just, basically, I couldn't see either one of his hands. I knew he was still in possession of the gun. Once I got behind him.
> …
>
> I gave my first command, drop the gun. And nothing happened. So I gave a second command to drop the gun. And nothing happened.
> …
>
> We're still – foot-long sprint, hands still out of view. And just -- just a lot of motion. Like, fooling with the gun.
>
> I -- It was a split second, so it's not like I was able to analyze, exactly. But it was a full-out sprint, and the gun was still in his possession. I

never -- I never lost sight of him, so I know he didn't throw it. He still had it in his possession.

So, after my second command, that's when I fired my first shot. (78)

(Rec. Doc. 26-4, p. 75-78).

Officer Huval further testified that he shot Lewis, not because he was running away, but because he refused to show his hands and drop the gun. (Rec. Doc. 26-4, p. 79). He feared that Lewis could go around the corner and ambush him or fire at him. (*Id*.) After Officer Huval shot Lewis, he and other officers on scene discovered that the gun was tethered to Lewis's body. (Rec. Doc. 26-4, p. 12; 81).  Lewis's Opposition admits that he had a gun as he was fleeing from the officers:

> The gun was attached to a lanyard which hung around his neck to beneath his shorts, and through the waistband of his lengthy sports shorts. While running away from the police with all his might, Tevin's shorts rose inadvertently exposing the gun and lanyard. His hand got stuck in the lanyard but at no time did he touch the gun.

(Rec. Doc. 30, p. 5).

Based on the undisputed facts that Lewis was fleeing from the officers and that he had a gun, the Court frames the inquiry as: whether it was clearly established that the Fourth Amendment prohibited the officer's conduct in the situation he confronted – whether to shoot a fleeing suspect who produces a gun, refuses to stop or drop the gun after two commands, and appears to be "fooling with" the gun,[2]

---

[2]        See Rec. Doc. 26-4, p. 77.

when persons in the immediate area, including several other officers in the area and citizens in the neighborhood, are at risk.

Although no Fifth Circuit cases have addressed precisely the scenario at issue, the Court finds that it was not clearly established law not to shoot a suspect fleeing by foot who was "fooling with" a gun and refused to drop it. Fifth Circuit jurisprudence considering similar factual scenarios is instructive. For instance, the Fifth Circuit has denied excessive force claims in cases where the arrestee *appeared* to have a gun. See e.g. *Manis v. Lawson*, 585 F.3d 839, 844 (5th Cir. 2009), citing cases. (This court has found an officer's use of deadly force to be reasonable when a suspect moves out of the officer's line of sight such that the officer could reasonably believe the suspect was reaching for a weapon.); *Ramirez v. Knoulton*, 542 F.3d 124, 131 (5th Cir. 2008) (Arrestee repeatedly refused the officers' commands, stood, armed, several yards from the officers, brought his hands together in what could reasonably be interpreted as a threatening gesture, as if to grip the handgun with both hands in preparation to aim it at the officers.); *Reese v. Anderson,* 926 F.2d 494, 500 (5th Cir. 1991) (Arrestee, while seated in a car which had come to an abrupt stop, twice failed to comply with officer's demands when reaching down below the officer's sight line.) The instant case lacks the possibility that the arrestee had a gun and the uncertainty regarding the arrestee's movements present in the foregoing cases. Lewis *did* have a gun, and Officer Huval *knew* that Lewis had a gun and twice

18

ordered him to drop it, yet Lewis failed to comply and was admittedly handling the gun as he fled. Compare *Amador v. Vasquez*, 952 F.3d 624 (5th Cir. 2020), wherein qualified immunity was denied to officers who should have understood not to use deadly force against a man holding a knife, nearly thirty feet away, motionless, and in a "surrender pose."

Plaintiff argues that he never posed a threat to Officer Huval, because he never had the gun in his hand, though he admits that his hand was stuck in the lanyard tied around the gun. (Rec. Doc. 30, p. 5). Whether a fleeing suspect posed a subjective threat is immaterial. The arrestee's "subjective intent is irrelevant where the only issue is what a reasonable officer would have believed under these circumstances." *Ramirez v. Knoulton*, 542 F.3d 124, 131 (5th Cir. 2008). Officer Huval encountered an unprovoked fleeing individual who had a gun, refused to drop it despite two commands to do so, and whose hand was at least very near the gun. Lewis even admitted in his statement to investigators following the incident that Officer Huval could have misunderstood Lewis's actions. (Rec. Doc. 41).

Plaintiff urges the Court to review video (apparently surveillance video from a neighbor's house) and third-party witness testimony to conclude that Lewis "was running for his life, not looking back at Officer Huval, or showing any type of threatening or aggressive behavior toward Officer Huval or any other person." (Rec.

Doc. 30, p. 12). The parties did not provide any video to the Court.[3] Further, the only witness who reportedly observed the incident testified to the grand jury that Lewis had a firearm, did not listen to the police officer to put it down, and ran with the firearm. (Rec. Doc. 36-1, p. 48). She agreed that it appeared as if the gun was tied to Lewis's wrist and he was attempting to "shake it off." (Rec. Doc. 36-1, p. 48-49). Thus, the testimony Plaintiff presented does not create any issues of fact.

Plaintiff further contends that Officer Huval could have removed himself from the danger, but he did not. (Rec. Doc. 30, p. 12). The Supreme Court has rejected this argument:

> But wait, says respondent: Couldn't the innocent public equally have been protected, and the tragic accident entirely avoided, if the police had simply ceased their pursuit? We think the police need not have taken that chance and hoped for the best.

*Scott v. Harris*, 550 U.S. 372, 385 (2007).

Although Plaintiff maintains that he technically never held the gun in his hand and that he did not subjectively intend to shoot the gun entangled in his wrist, the Court finds that the undisputed evidence supports that Officer Huval reasonably believed that Lewis posed a serious threat to himself or others in the area. Thus, even if Plaintiff could prove the essential elements of his Fourth Amendment excessive

---

[3]    The Court acknowledges witness testimony that indicates the video showed only one person chasing another. See e.g. Rec. Doc. 26-5, p. 11; 36-4, p. 12-13. However, the Court does not rely on this testimony to prove what the video does or does not show.

force claim (which the Court explicitly does not find), Officer Huval is entitled to qualified immunity.

## IV.    <u>Plaintiff's Fifth Amendment claim.</u>

Defendants next seek to dismiss Plaintiff's Fifth Amendment claim. The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without "due process of law." *Dusenbery v. United States*, 534 U.S. 161, 167 (2002). The Fifth Amendment applies to federal actors; the Fourteenth Amendment applies to state actors. *Marceaux v. Lafayette City-Par. Consol. Gov't*, 921 F.Supp.2d 605, 631 (W.D. La. 2013). Plaintiff's Complaint is devoid of any factual allegations regarding any federal actor, and Plaintiff asserts no response to Defendants' motion to dismiss in this regard. Therefore, the Court recommends that Plaintiff's claims for Fifth Amendment violations be dismissed.

## V.    <u>Plaintiff's Eighth Amendment claim.</u>

Defendants seek to dismiss Plaintiff's conclusory claims for violation of the Eighth Amendment. Plaintiff did not oppose Defendants' Motion in this regard. The Eighth Amendment protects inmates from cruel and unusual punishment. See *Gillespie v. Crawford*, 833 F.2d 47, 50 (5th Cir. 1987), *on reh'g*, 858 F.2d 1101 (5th Cir. 1988). The Court agrees that Plaintiff's alleged facts do not set forth an Eighth Amendment claim. The Court recommends that these claims be dismissed.

## VI.    <u>Plaintiff's Fourteenth Amendment claim.</u>

Defendants next seek dismissal of Plaintiff's claims for alleged violations of his Fourteenth Amendment rights. The Fourteenth Amendment protects an individual's substantive due process, procedural due process, and equal protection rights. The core concept underlying due process is protection from arbitrary government action. *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). The Supreme Court has instructed that excessive force claims must be analyzed under the Fourth Amendment's reasonableness standard, rather than a substantive due process approach under the Fourteenth Amendment. *Graham v. Connor,* 490 U.S. 386, 395 (1989).

> While substantive due process applies to some police conduct, the Supreme Court has refused to look beyond the Fourth Amendment when the police "seize" a suspect. A seizure occurs "only when there is a governmental termination of freedom of movement *through means intentionally applied.*"

> *Mason v. Lafayette City-Par. Consol. Gov't,* 806 F.3d 268, 278 (5th Cir. 2015), citing *Lewis*, 523 U.S. at 843-45 and *Brower v. Cnty. of Inyo,* 489 U.S. 593, 597 (1989).

Officer Huval terminated Lewis's freedom of movement when he shot him. Thus, Plaintiff's claim is governed by the Fourth Amendment, and his substantive due process claim fails as a matter of law. See *id*.

**VII.**     <u>Plaintiff's *Monell* claims against LCG.</u>

Plaintiff alleges that LCG "maintained, enforced…and applied policies, practices, or customs" regarding seizure and use of force, training, supervising, and disciplining police officers. Jurisprudence often refers to this as a *Monell* claim, as established by the Supreme Court in *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691, (1978). "[A] municipality, may not be held liable under § 1983 on a basis of vicarious liability." *Hicks-Fields v. Harris Cty., Texas*, 860 F.3d 803, 808 (5th Cir. 2017), citing *Monell*, 436 U.S. at 691. Rather, a municipality may be liable where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.*

"All [] inadequate supervision, failure to train, and policy, practice, or custom claims fail without an underlying constitutional violation." *Whitley v. Hanna*, 726 F.3d 631, 648 (5th Cir. 2013). Because the Court finds that Plaintiff's claims for constitutional violations fail, the Court must find that Plaintiff's *Monell* claims likewise fail as a matter of law. Nonetheless, assuming for purposes of the District Court's review that Plaintiff has asserted viable claims for constitutional violations, the Court further considers whether Plaintiff has asserted a viable *Monell* claim against LCG.

"To establish municipal liability under §1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citing *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001)).

"Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Hicks-Fields v. Harris Cty., Texas*, 860 F.3d 803, 808–09 (5th Cir. 2017), citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "While an unconstitutional official policy renders a municipality culpable under § 1983, even a facially innocuous policy will support liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." *Piotrowski*, 237 F.3d at 579, citing *Bd. of Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 407 (1997). The plaintiff must specifically identify each policy which allegedly caused constitutional violations, so that the court can determine whether each one is facially constitutional or unconstitutional. *Id*. "[I]solated unconstitutional actions by municipal employees will almost never trigger liability." *Id*. at 578. Indeed, "the touchstone for establishing customary policy is a persistent and widespread practice." *Id*. at 581.

24

With regard to the third element, *Monell* plaintiffs must overcome a high threshold of proof by establishing "both the causal link ('moving force') and the City's degree of culpability ('deliberate indifference' to federally protected rights)." *Snyder v. Trepagnier,* 142 F.3d 791, 796 (5th Cir.1998), citing *Bryan County,* 520 U.S. at 410. "This requires showing either that the policy itself was unconstitutional or that it was adopted with deliberate indifference to the 'known or obvious fact that such constitutional violations would result.'" *Webb v. Town of Saint Joseph*, 925 F.3d 209, 219 (5th Cir. 2019) (citations omitted).

Plaintiff asserts three bases for his *Monell* claims: 1) LPD's failure to "have a procedure in place for training on when to conduct a foot pursuit and subsequently, no procedure on when to shoot or not to shoot during a foot pursuit;" 2) LPD's policy and training on "force science;" and 3) LPD's policy of self-investigation of officer-involved shootings. (Rec. Doc. 30, p. 14-15). Defendants contend that Plaintiff's Complaint does not allege sufficient factual allegations in support of these *Monell* claims. Upon converting Defendants' Rule 12(b)(6) Motion to Dismiss into a motion for summary judgment, this Court ordered the parties to supplement the record with relevant and appropriate summary-judgment-style evidence. (Rec. Doc. 25). Thus, the Court must determine whether the evidence presented by both parties supports a claim for *Monell* liability based on Plaintiff's three alleged policies.

25

1) Lack of foot pursuit policy.

In support of his argument that LCG is liable for failing to have a foot pursuit procedure in place, Plaintiff relies upon grand jury testimony of Ryan Richard, LPD training coordinator. Officer Richard testified at length as to how LPD officers are trained to handle fleeing and/or armed suspects and when use of lethal force is appropriate. (Rec. Doc. 36, p. 3 *et seq*). He specifically noted several issues officers might face in a foot pursuit, emphasizing that officers are trained to be physically fit and mentally prepared (avoiding tunnel vision). (Rec. Doc. 36, p. 13-14). Officers' training in this regard includes handling different scenarios, such as chasing a suspect who the officer knows is or is not armed, or a situation in which the officer has no knowledge either way. (Rec. Doc. 36, p. 13-14).[4]

Based on this evidence, which Plaintiff submitted, the Court finds that Plaintiff has failed to show that LPD lacks a foot pursuit policy. To the contrary, the evidence shows that LPD trained its officers in how to handle fleeing suspects on foot. As the jurisprudence and LPD training instructs, an officer's handling of an

---

[4]    Plaintiff specifically relies on Officer Richard's grand jury testimony wherein he answered a grand juror's question, "Are there any scenarios where a[n] officer is taught not to pursue?" (Rec. Doc. 36-1, p. 1). Officer Richard responded that a current policy was to not pursue a fleeing suspect in a vehicle regarding a misdemeanor. Otherwise, Officer Richard testified that there are no foot pursuit scenarios where an officer is taught not to pursue. Rec. Doc. 36-1, p. 1-2. Officer Richard did not testify that LPD has no policy for the use of deadly force during a foot pursuit, as Plaintiff contends.

encounter with a fleeing suspect is situation-specific. Therefore, Plaintiff's *Monell* claims for an alleged lack of foot pursuit policy should be dismissed.

2) Force science policy

Officer Richard testified before the state grand jury regarding Force Science, "a company that…tells police officers what their bodies are going to go through whenever [they are] presented with a problem." (Rec. Doc. 36-1, p. 15). He provided the examples of an elevated heart rate and tunnel vision, and he explained that Force Science teaches when it is appropriate to shoot someone in the back. According to Officer Richard's explanation and the teachings of Force Science, the appropriate response is governed by *Tennessee v. Garner, supra*. Further, officers should be prepared to take appropriate action quickly, rather than be faced with the disadvantage of reaction. See generally (Rec. Doc. 36-1, p. 15-27).

Plaintiff argues that the LPD's training based on Force Science "is contrary to the rights of citizens of the United States," "devalues human life of a person deemed to be suspicious or a suspect," and "present[s] an inequitable equation with regard to value of the officer's life versus a citizen." (Rec. Doc. 30, p. 15). Plaintiff provided no legal or evidentiary support for this argument. The Court finds that Supreme Court precedent discussed throughout this opinion supports the testimonial evidence presented of LPD's policies and training procedures. Plaintiff's *Monell* claims based on Force Science should be dismissed.

3) <u>Self-investigation policy</u>

Plaintiff last challenges LPD's policy of internally investigating officer involved shootings at the time this incident occurred in 2015, arguing that this policy "led to a culture of disregard for human life…" (Rec. Doc. 30, p. 15). Although Detective Ben Suire testified that LPD investigated its officer involved shootings within the department at the time of the incident, he testified that the fact that an officer was involved did not affect his investigation. He would arrest and jail police officers who he found did wrong. (Rec. Doc. 36-2, p. 49-50). Plaintiff did not present any legal argument, jurisprudence, or evidence in support of his position that this policy was a "moving force" behind Officer Huval's use of force upon Lewis or that the LPD should be found culpable because of the policy. Thus, the Court finds that Plaintiff's *Monell* claim based on LPD's self-investigation policy should be dismissed.

## VIII.   <u>Plaintiff's state law claims for excessive force and false arrest.</u>

Defendants last seek to dismiss Plaintiff's state law claims for excessive force, false arrest, and municipal liability against LCG. Defendants did not move to dismiss Plaintiff's claims for negligence under La. C.C. art. 2315, assault or battery. (See Rec. Doc. 1, p. 7-8).

A. <u>State law claims for excessive force.</u>

Louisiana law regarding excessive force mirrors federal law, and the inquiry is the same: whether the use of force was objectively reasonable given the totality of the circumstances. *Shepherd on behalf of Estate of Shepherd v. City of Shreveport*, 920 F.3d 278, 286 (5th Cir. 2019), citing *Deville v. Marcantel*, 567 F.3d 156, 172 (5th Cir. 2009) and *Kyle v. City of New Orleans*, 353 So.2d 969, 973 (La. 1977). Therefore, the Court finds, as it did upon considering Plaintiff's §1983 excessive force claim, that Plaintiff cannot prevail on a state law excessive force claim. See *id.*

B. <u>State law claims for false arrest.</u>

Under Louisiana law, "[f]alse arrest and imprisonment occur when one arrests and restrains another against his will without a warrant or other statutory authority. Simply stated, it is restraint without color of legal authority." *Deville*, 567 F.3d at 172, citing *Kyle,* 353 So.2d at 971. The existence of probable cause for an arrest dooms the plaintiff's false arrest claims as a matter of law. *Morris v. Dillard Dep't Stores, Inc.,* 277 F.3d 743, 756 (5th Cir. 2001). Under Louisiana law, "Probable cause to arrest exists when the facts and circumstances within an officer's knowledge, and of which he has reasonable and trustworthy information, are sufficient to justify a person of average caution in the belief that the accused has committed an offense." *State v. Wells*, 2008-2262 (La. 7/6/10), 45 So. 3d 577, 582–83. "Furtive actions and flight at the approach of law enforcement officers may,

when coupled with other specific knowledge, give rise to the existence of probable cause." *State v. Gibson*, 12-350 (La. App. 5 Cir. 10/30/12), 103 So. 3d 641, 650.

Not only did Lewis flee from Officer Huval and refuse to comply with his commands, but he also possessed a gun and appeared to be handling it in some way. As discussed above, the evidence shows that Officer Huval had probable cause to arrest Lewis at least for resisting an officer. Further, the Court finds that Lewis's actions vis-à-vis the gun support a finding of probable cause for arrest for violation of La. R.S. 14:37.2 – aggravated assault of an officer. In Louisiana the crime of assault includes the intentional placing of another in reasonable apprehension of receiving a battery. La. R.S. 14:36. An aggravated assault is an assault committed with a dangerous weapon. La. R.S. 14:37. La. R.S. 14:37.2 governs aggravated assault of a peace officer.

Louisiana jurisprudence supports this Court's finding that Officer Huval had probable cause to arrest Lewis for assault. In *Gibson*, the Louisiana Fifth Circuit Court of Appeals found that an officer had reasonable suspicion to conduct an investigatory stop of a defendant who he observed reach for a gun in his waistband and then flee into a residence. *Id*. The officer's "reasonable suspicion ripened into probable cause to arrest defendant after he was observed fleeing with a gun, which was partially visible, as he followed a suspected drug dealer into the residence." *Id*. See also *State v. Hathaway*, 411 So. 2d 1074, 1078 (La. 1982), wherein the Louisiana

Supreme Court noted that a suspect who pointed a gun an officer could be arrested without a warrant for assault of an officer even if there was no illegality in the events leading up to the arrest; *State v. Washington*, 98-545 (La. App. 5 Cir. 12/16/98), 725 So. 2d 587, 591, and cases cited therein, wherein the court held the defendant was lawfully arrested without a warrant for resisting an officer when he fled the scene as officers were attempting to seize property and make arrests; *State v. Wiltz*, 2008-1441 (La. App. 4 Cir. 12/16/09), 28 So. 3d 554, 557, *writ denied,* 2010-0103 (La. 11/12/10), 49 So. 3d 885, wherein the defendant was convicted of aggravated assault of an officer in violation of La. R.S. 14:37.2 for fleeing from officer with a visible gun, though the defendant denied pointing the gun at officers. Because the undisputed facts show that Officer Huval had probable cause to arrest the fleeing and apparently gun-wielding Lewis, the Court finds that Plaintiff's state law claims for false arrest should be dismissed.

C. State law claims against LCG and remaining state law claims.

Defendants last move to dismiss LCG from any state law claims. Under Louisiana law, employers, such as LCG, are vicariously liable for the acts of their employees. *Deville,* 567 F.3d at 174. ("Municipalities do not enjoy special protection from vicarious liability under Louisiana law and are subject to *respondeat superior* like every other employer.") Because the Court finds that Plaintiff's state law claims for excessive force and false arrest against Officer Huval should be dismissed, the

Court finds that Plaintiff's claims against LCG for vicarious liability under Louisiana law insofar as they relate to excessive force and false arrest claims must also be dismissed.

Plaintiff also asserted Louisiana state law claims for negligence under La. C.C. art. 2315 and for assault and battery; however, Defendants did not seek to dismiss these claims. Under 18 U.S.C. §1367(c), the court may decline to exercise supplemental jurisdiction over state law claims when all other claims over which it has original jurisdiction are dismissed. The court has wide discretion in whether to decline to exercise supplemental jurisdiction. *Hicks v. Austin Indep. Sch. Dist.,* 564 F. App'x 747, 748 (5th Cir. 2014). In this discretion, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims for negligence, assault, and battery. The Court therefore recommends that these remaining claims be dismissed without prejudice.

## CONCLUSION

For the reasons discussed herein, it is recommended that Defendants' Re-Urged Motion to Dismiss, converted to Motion for Summary Judgment, (Rec. Doc. 26) be GRANTED. The Court recommends that Plaintiff's §1983 claims for excessive force and false arrest and all Fourth, Fifth, Eighth, Fourteenth, *Monell*, and state law claims for excessive force and false arrest be dismissed with prejudice. The Court further recommends that Plaintiff's remaining state law claims for negligence,

assault, and battery be dismissed without prejudice, given the Court's determination to not exercise supplemental jurisdiction over these claims.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 24th day of April, 2020.

PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE